IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MICHAEL DUCHELLE GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:21cv00165 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| NURSE JONES, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) |          United States District Judge |
| Defendants. | ) | |

_____

Plaintiff Michael Duchelle Green, a Virginia inmate proceeding *pro se,* filed this civil action under 42 U.S.C. § 1983 against Dr. Liu and Nurses Jones and Rogers, alleging that they denied him adequate medical treatment during his incarceration at two Virginia detention facilities. This matter is before the court on motions for summary judgment filed by Dr. Liu and Nurse Jones.[1] Having considered the evidence, the court will grant the defendants' motions.

I.

**A. Green's verified second amended complaint (ECF No. 56)[2]**

Green alleges he was assaulted by an officer at the Halifax Adult Detention Center ("Halifax") on February 10, 2021, and sustained injuries to his knee, shoulder, and neck. Dr. Liu examined him after the incident, while Green was housed at Halifax. On February 26,

---

[1] The court previously granted the motion to dismiss of Nurse Rogers. (*See* ECF Nos. 99 & 100.)

[2] Green's second amended complaint (ECF No. 56) is his only operative complaint in this action. (*See* ECF No. 52.)

2021, Green was transferred to the Lynchburg Adult Detention Center ("Lynchburg"), where he "enco[unt]ered Nurse Jones and Dr. L[iu]." (2d Am. Compl. at 3 [ECF No. 56].)

Green alleges that Nurse Jones was "familiar with [his] medical status" and "the incident" that caused injuries to his knee, shoulder, and neck. (*Id.*) He claims that during the months of March and April, Nurse Jones repeatedly told him that his injuries were "old" and that he was a "chronic pain patient." (*Id.*) He asserts that Nurse Jones "would not let [him] see the doctor" for 90 days. (*Id.*) Instead, the "only thing she would do is put [Green's] chart in front of Dr. L[iu]," and Dr. Liu would "increase [Green's] pain med[ication]s." (*Id.*) He claims that Dr. Liu increased his pain medications at least three times without examining him. Nurse Jones allegedly called Green to the medical department on one occasion and told him that "Dr. L[iu] doesn't treat the injury, he treat[]s pain, . . . he's a pain specialist." (*Id.*) On another occasion, Green claims Nurse Jones called him to the medical department, examined his knee, determined that he had a "broken rotilaba [*sic*] bone," and that she was going to call the Virginia Department of Corrections ("VDOC") to "come get [him] so [he] could get [his] medical needs taken care of." (*Id.* at 4.) Green claims that Nurse Jones and Dr. Liu let him "sit" for 101 days "in sever[e] pain and suffering," and that Dr. Liu "refuse[d] to send [him] to a specialist because Nurse Jones said [Green had] a history of chronic pain." (*Id.* at 3−4.)

On June 7, 2021, Green was transferred to Nottoway Correctional Center, where he claims he was examined by medical staff and referred to an orthopedist for "broken Roteliba [*sic*] bones" and an "aggravated shoulder and collar bone." (*Id.* at 5.)

**B. Dr. Liu and Nurse Jones's motions for summary judgment**

Dr. Liu and Nurse Jones have filed motions for summary judgment, arguing that there are no genuine issues of material fact that would support Green's claim that they were deliberately indifferent to a serious medical need.. In support of their motions, Dr. Liu submitted an affidavit (ECF No. 82-2) and Green's medical records (ECF No. 82-3),[3] and Nurse Jones submitted a declaration (ECF No. 87-1).

Dr. Liu is a licensed physician in the Commonwealth of Virginia and has practiced medicine since 2009. He works for Mediko, Inc. ("Mediko") as the Medical Director for the Blue Ridge Regional Jail system, which includes the facilities at Halifax and Lynchburg. As the Medical Director, Dr. Liu helps monitor inmates' medical needs, medical treatment, and medical care visits. He also monitors and provides advice to Mediko's healthcare providers and staff. Dr. Liu states that he plays no role in the review of or response to kiosk requests or grievances. Dr. Liu examined Green on four separate occasions and reviewed his medical records multiple times in the approximately three months while Green was housed at Halifax and Lynchburg. (*See* Aff. of Qing Liu, MD ¶¶ 2, 5, 11, Nov. 18, 2021 [ECF No. 82-2].)

Nurse Jones is a Licensed Practical Nurse ("LPN") at Lynchburg. In her role as an LPN, Nurse Jones depends upon the institution's physician, Dr. Liu, to advise her of the medical treatment, diagnostic tests, and medication needs for inmates, which Dr. Liu determines through chart reviews and in-person examinations. Nurse Jones administers medications, responds to specific inmate requests, performs basic medical treatment, and sees inmates at nurse sick call to determine if they need evaluation by Dr. Liu. As an LPN, Nurse

---

[3] Green does not challenge the authenticity or accuracy of the medical records.

Jones states that she does not have authority to develop treatment plans or prescribe medications. (*See* Decl. of Nurse Teresa Jones ¶¶ 2, 3, Nov. 19, 2021 [ECF No. 87-1].)

Dr. Liu ordered x-rays of Green's right knee and left shoulder; they were completed on February 23, 2021, three days prior to Green's transfer to Lynchburg. (*Id.* ¶ 5.) The x-ray results were within normal limits with no abnormalities noted; the x-ray did not reveal any acute distress. (*Id.*) With respect to his knee, Green's weight-bearing ability was intact and he had no mobility issues. (*Id.*) The x-ray of his left shoulder showed an old clavicle fracture and clavicle separation, which existed prior to the February 10 incident with Officer Ragsdale. (*Id.*) The medical records indicate that the x-rays found no new abnormalities. (Med. R. at 161 [ECF No. 82-3].)

Green was transferred from Halifax to Lynchburg on February 26, 2021, at which time Dr. Liu reviewed his medical records. His medical transfer form indicates that Green reported right knee and left shoulder pain. (Med. R. at 3.) It also shows that he was already taking Tylenol for general pain and Elavil[4] for nerve pain at the time of his transfer. (Med. R. at 3; Jones Decl. ¶ 4.)

Dr. Liu also states that, upon Green's transfer to Lynchburg, the nurses informed Dr. Liu that Green was "well known to them from a previous incarceration" when Green made "several complaints of unsubstantiated pain and continually demanded more workups and stronger medications." (Liu Aff. ¶ 8.) Dr. Liu attests, however, that he did not base any

---

[4] Elavil is a tricyclic antidepressant with sedative effects. Also known as Amitriptyline, it affects certain chemical messengers (neurotransmitters) that communicate between brain cells and help regulate mood. *See* Drugs.com, Elavil, https://www.drugs.com/elavil.html (last visited Sept. 28, 2022).

treatment decisions on the nurses' recollections of Green, "as prior experiences are not indicative of his current medical needs."[5] (*Id.*)

On March 4, 2021, six days after Green's transfer to the Lynchburg, Nurse Jones saw Green at a sick call. Nurse Jones states that she "knew Green from treating him during his previous incarceration, during which he made complaints of chronic pain, altercations with officers, and medical negligence." (Jones Decl. ¶ 6.) Nurse Jones also states that she asked Green whether he had received treatment for his pain while he was out of jail for over two years since his last incarceration, and he responded that he "had no treatment while he was out." (*Id.*)

Green complained of pain in his right knee—the same knee that Dr. Liu had x-rayed nine days earlier and found no abnormalities. Nurse Jones avers that Green stated that he "want[ed his knee] evaluated and [he] want[ed] it fixed." (*Id.*) Nurse Jones explained to Green that he had seen the jail physician multiple times since the beginning of 2021 and that he was on pain medications. The medical records state that Green reported no new complaints about his knee other than the issues he had previously raised with Dr. Liu. (Med. R. at 161.) Nurse Jones avers that, "[d]espite continued treatment with medications and several recent evaluations by Dr. Liu, [] Green said his knee hurt and he wanted more work up and treatment." (Jones Decl. ¶ 6.) The medical records show that Nurse Jones placed Green's chart for Dr. Liu's review to determine if further work-up or a follow-up visit was necessary. (Med. R. at 161.)

---

[5] Dr. Liu does note, though, that "knowing [Green's] past tendencies reassured [him] in the context of a complete lack of objective evidence of any injury or abnormality" present upon examination and in the x-ray, that is his plan of care was appropriate. (Liu Aff. ¶ 8.)

Dr. Liu assessed Green's medical records on March 10, 2021, as part of his routine chart reviews of his patients. (Liu Aff. ¶ 9; Med. R. at 161.) Green was already taking Tylenol and Elavil for his arthritis and chronic back pain, and the medical records indicate that Dr. Liu continued both of these medications. (*Id.*)

The medical records reflect that, on March 17, 2021, Dr. Liu again examined Green for his complaints of left shoulder and right knee pain. (Med. R. at 160; Liu Aff. ¶ 10.) Dr. Liu noted that Green was calm and in no acute distress throughout the exam. (*Id.*) Green had full range of motion in both shoulders, and he had no pain to the touch throughout the examination. (*Id.*) Dr. Liu diagnosed Green with chronic pain, instructed him to continue taking his pain medications, and added prescriptions for Naproxen[6] to treat his pain and Lisinopril[7] for his blood pressure. (*Id.*; Med. R. at 168, 170.) Dr. Liu also ordered lab work (complete blood count, liver function, and a hemoglobin A1C) and the lab results returned all within normal limits except for the hemoglobin A1C (blood sugar) and aspartate transaminase, or AST (liver enzyme). (Jones Decl. ¶ 8.)

Throughout March 2021, Green continued to submit multiple inmate requests for diagnostic tests, a specialist, further evaluation of his pain complaints, and a cane and chair for his cell. (*Id.* at. ¶ 9.) Nurse Jones submits that "the issues were addressed several times, but he continued to submit requests." (*Id.*) The nursing staff, including Nurse Jones, continued with

---

[6] Naproxen is a nonsteroidal anti-inflammatory drug that works by reducing hormones that cause inflammation and pain in the body. *See* Drugs.com, Naproxen, https://www.drugs.com/naproxen.html (last visited Sept. 28, 2022).

[7] Lisinopril is an angiotensin converting enzyme ("ACE") inhibitor used to treat high blood pressure. *See* Drugs.com, Lisinopril, https://www.drugs.com/lisinopril.html (last visited Sept. 28, 2022).

the plan of care prescribed by Dr. Liu and continued to alert Dr. Liu to any concerns. (*Id.* at ¶ 10.) Dr. Liu asserts that he does not routinely see inmate medical requests, but he does regularly communicate with the nursing staff who apprise him of each inmate's medical needs and concerns. (Liu Aff. ¶ 11.) Dr. Liu states that he learned from the nurses that Green continued to input multiple requests for a "second opinion" on his "broken bone," despite no evidence of a broken bone. (*Id.*) In response to Green's repeated requests, Dr. Liu increased the dose of his Elavil and re-filled his Naproxen order to reduce his pain levels. Medical records reflect that Dr. Liu reviewed Green's chart on April 7 and April 14. (Med. R. at 160–61.)

On April 28, 2021, the medical records show that Dr. Liu evaluated Green again for right knee pain. (Med. R. at 159.) Dr. Liu observed that Green's range of motion in his knee was again intact and he had no tenderness to the area. (*Id.*; Liu Aff. ¶ 12.) His plantar flexion (the extension of his ankle with the foot pointing down and away) was also intact. (Liu Aff. ¶ 12.) The medical records indicate that Dr. Liu diagnosed him with knee pain, increased blood pressure, and anxiety disorder. (*Id.*) Dr. Liu ordered Clonidine[8] for Green's blood pressure "and for an added analgesic effect." (Liu Aff. ¶ 12; Med. R. at 171.) He also ordered a second set of x-rays, the results of which again indicated no fracture. (Liu Aff. ¶ 12.)

The medical records show that two days later, on April 30, 2021, Nurse Jones examined Green after he reported he had a swollen knee. (Med. R. at 158.) Upon exam, Nurse Jones observed that Green's knee was "not swollen." (Jones Decl. ¶ 13.) Green also complained of

---

[8] Clonidine lowers blood pressure by decreasing the levels of certain chemicals in the blood, allowing the "blood vessels to relax and [the] heart to beat more slowly and easily." *See* Drugs.com, Clonidine, https://www.drugs.com/clonidine.html (last visited Sept. 28, 2022).

crepitus, but Nurse Jones did not find anything physically to support his complaint. (*Id.*; Med. R. at 158.) Green further complained of a rash on his upper left arm, and Nurse Jones found a small patch of dry, flaky skin. She gave him hydrocortisone cream for his dry skin. (Med. R. at 158.)

The medical records reflect that Nurse Jones examined Green again on May 4, 2021, after Green complained that he fell across the toilet in his cell. (*Id.*) He reported ongoing pain related to his shoulder, arm, knee, neck, and lower back. Nurse Jones noted that she observed no edema or bruising and no pain or palpation of his lower back. (*Id.*; Jones Decl. ¶ 14.) She explained to Green that he was being treated for his pain complaints and noted that he had also made the same complaints during his last incarceration in 2018, but had not sought medical attention after his release. (Jones Decl. ¶ 14.) Green responded, "I'm here now and I want it addressed now, or we will address it in court." (*Id.*) Because there were no signs of any new injuries, Nurse Jones noted that she planned to continue the pain management treatment as ordered by Dr. Liu. (*Id.*)

The medical records indicate that Dr. Liu examined Green again on May 12, 2021, for his continued complaints of right knee pain. (Med. R. at 157.) Green described it as "pain all over," despite his full range of motion of his knee, no tenderness, and his ability to bear his full weight on it. (Liu Aff. ¶ 13.) Dr. Liu again noted that Green's knee x-ray was within normal limits. (Med. R. at 157) Finding no abnormalities in Green's knee, Dr. Liu diagnosed him with knee pain and hypertension and again counseled him to continue taking his pain medications to help with the pain. (Liu Aff. ¶ 13.) Dr. Liu ordered Lisinopril for Green's elevated blood

pressure. (Med. R. at 167−68; Jones Decl. ¶ 15.) Dr. Liu did not see Green after the exam on May 12, 2021.

The medical records show that Nurse Jones examined Green again on May 27, 2021. (Med. R. at 157.) Green said he needed a right knee replacement but, upon exam, Green had no swelling, redness, or issues with range of motion. (*Id.*; Jones Decl. ¶ 16.) Nurse Jones explained to Green that his pain was being treated and that Dr. Liu had recently renewed his pain medications two days prior. (Jones Decl. ¶ 16.)

On June 7, 2021, Green was transferred to Nottoway Correctional Center, a facility operated by the VDOC. Nurse Jones states that she was on vacation and unaware of his transfer until she returned. (*Id.* ¶ 17.) According to the transfer record, Green's medical conditions upon transfer were chronic knee pain and hypertension, and his medications were Elavil for nerve pain, Naproxen for pain, Clonidine for rest, and Lisinopril for hypertension. (Med. R. at 1.)

Nurse Jones avers that she is not aware of any broken bone in Green's knee and that she never called the VDOC or any VDOC employee regarding Green. (Jones Decl. ¶¶ 17−18.) She also states that she has no authority to have a prisoner transferred to a VDOC facility, and that the VDOC determines when inmates are transferred to a VDOC facility. (*Id.* ¶ 18.)

**C. Green's response in opposition to the motions for summary judgment**

In response to the motions for summary judgment, Green submitted an unverified response, but attached medical records to the response. The medical records show that, after Green was transferred to Nottoway, he received medical treatment for his knees and left shoulder. (ECF No. 89-1.) One report dated October 5, 2021, notes that Green had "mild

arthritis," "subacromial bursitis, and chronic AC joint separation" in his left shoulder and "bilateral knee popping." (VCU Med. Ctr., Initial Visit Rep. [ECF No. 89-1 at 5].) Another report dated October 15, 2021, notes that Green had "AC joint separation" and a "[n]ew finding of an avulsion fracture involving the medial aspect of the acromion [(top outer edge of the scapula)]." (Patient Rep. [ECF No. 89-1 at 2].)

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof

that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315−16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

Although the court does not make a credibility determination when adjudicating a motion for summary judgment, "'[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'" *Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## III.

Green alleges that Dr. Liu and Nurse Jones failed to provide adequate medical treatment for his knee and shoulder injuries by letting him "sit" for 101 days "in sever[e] pain and suffering." (2d Am. Compl. at 4.) But Green's allegations are belied by the undisputed medical records. Based on that evidence, which directly refutes Green's claims to the contrary, no reasonable jury could conclude that either Dr. Liu or Nurse Jones was deliberately indifferent to his serious medical need.

To establish a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must put forth facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Conner v.*

*Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A prison official is "deliberately indifferent" only if he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (U.S. 1994). The prison official's conduct must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Militier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

A claim concerning a mere disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990). In fact, "many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Mere negligence does not constitute deliberate indifference; rather, a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists and must draw the inference. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *see also Farmer*, 511 U.S. at 837. An "error of judgment" on the part of prison medical staff or "inadvertent failure to provide adequate medical care," while perhaps sufficient to support an action for malpractice, does not constitute a constitutional deprivation redressable under § 1983. *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989).

Intentional delay of, or interference with, medical treatment can also amount to deliberate indifference. *See Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). The Fourth Circuit, however, has held that there is "no

Eighth Amendment violation unless 'the delay results in some substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" *Formica*, 739 F. App'x at 755 (citing *Webb v. Hamidullah*, 281 F. App'x 159, 166–67 (4th Cir. 2008)); *see also Shame v. S.C. Dep't of Corr.*, 621 F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." (internal quotation marks omitted)). "[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Id.* at 758 (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)) (emphasis added).

Although Green asserts in his verified second amended complaint that the defendants neglected his medical needs while he was at Lynchburg, the defendants and the uncontroverted medical records (*see* ECF No. 82-3) tell a totally different story. Where Green's assertions are "blatantly contradicted" by the medical records, the court will rely on the medical records. *See Smith*, 578 F.3d at 254.

The medical records reflect that Dr. Liu personally examined Green on four occasions following the September 22 incident. Dr. Liu also reviewed Green's medical charts multiple times during the approximately three-month period. In addition, Dr. Liu ordered x-rays of Green's knees and shoulder and adjusted and/or added medication prescriptions as he deemed appropriate.

The medical records also reflect that Nurse Jones personally examined Green on several occasions and was responsive to his medical complaints. Nurse Jones routinely updated

Green's medical chart for Dr. Liu's review and continuously followed Dr. Liu's treatment plans.

Based on the records, Dr. Liu and Nurse Jones consistently responded to Green's medical complaints. Green may not have agreed with their decisions concerning diagnosis and/or treatment, but a disagreement between a medical provider and patient over a diagnosis or the course of treatment does not demonstrate deliberate indifference or state a colorable Eighth Amendment claim. *See Wright*, 766 F.2d at 849; *Russell*, 528 F.2d at 319; *Harris*, 761 F. Supp. at 414. Nothing in the medical records suggests that Dr. Liu's or Nurse Jones's treatment of Green was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Militier*, 896 F.2d at 851. Moreover, to the extent that Dr. Liu may have missed some diagnosis in Green's shoulder or knees or made an error in judgment, any such inadvertent failure would, at most, amount to negligence, which is not actionable under § 1983.

Finding no genuine dispute of material fact that would support Green's deliberate indifference claims, the court concludes that Dr. Liu and Nurse Jones are entitled to judgment as a matter of law.

## IV.

For the reasons stated, the court will grant Dr. Liu's and Nurse Jones's motions for summary judgment. Because there are no genuine disputes of material facts and the defendants are entitled to judgment as a matter of law, the court will also deny Green's motion for summary judgment.

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 29th day of September, 2022.

                                              */s/ Thomas T. Cullen*
                                              HON. THOMAS T. CULLEN
                                              UNITED STATES DISTRICT JUDGE